UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

AZAR OSMANOVIC,

       Petitioner,

v.                                  Case No. 3:15-cv-1257-J-34PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

       Respondents.

_____

## ORDER

### I. Status

Petitioner Azar Osmanovic, an inmate of the Florida penal system, initiated this action on July 16, 2015,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, Osmanovic challenges a 2008 state court (Duval County, Florida) judgment of conviction for armed burglary. Osmanovic raises four grounds for relief. See Doc. 1 at 4-11.[2] Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus as Untimely and, Alternatively, Answer to Petition (Resp.; Doc. 19) with exhibits (Resp. Ex.). Osmanovic submitted a brief in reply on November 29, 2016. See Reply (Reply; Doc. 24). This case is ripe for review.

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Relevant Procedural History

On March 6, 2008, by way of a second amended Information, the State of Florida charged Osmanovic with nine counts of burglary of a structure or conveyance (counts one, four, five, six, seven, eight, ten, eleven, twelve), armed burglary (count two), grand theft (count three), possession of burglary tools (count nine), and escape (count thirteen). Resp. Ex. A at 158-60. Shortly thereafter, on March 10, 2008, Osmanovic entered into an open plea of guilty to count two. Id. at 161-62, 271-78. On April 24, 2008, the circuit court sentenced Osmanovic to incarceration for a term of eighteen years, with a ten-year minimum mandatory pursuant to section 775.087, Florida Statutes. Id. at 169-74, 332. The state nolle prossed the remaining counts. Id. at 334.

On direct appeal, Osmanovic's appellate counsel filed an Anders[3] brief, and Osmanovic did not file a pro se initial brief. Resp. Exs. C; D. The state did not file an answer brief. Resp. Ex. D. On March 24, 2009, Florida's First District Court of Appeal (First DCA) per curiam affirmed Osmanovic's conviction and sentence without a written opinion. Resp. Ex. E. The First DCA issued its Mandate on April 21, 2009. Resp. Ex. F.

On May 6, 2009, Osmanovic, with the assistance of counsel, filed a Motion to Correct Sentence pursuant to Florida Rule of Criminal Procedure 3.800(a), in which he argued his ten-year minimum mandatory sentence was illegal. Resp. Ex. G. The circuit court denied the Rule 3.800(a) Motion on June 8, 2009, and August 7, 2009.[4] Resp. Exs. K; L. Osmanovic did not immediately appeal the circuit court's order within the thirty-day window afforded under Florida law. See Fla. R. App. P. 9.140(b)(3). However, on June

---

[3] Anders v. State of California, 386 U.S. 738 (1967).
[4] It is not apparent from the record why the circuit court entered two separate orders denying the same motion.

25, 2010, Osmanovic filed a pro se Petition for Writ of Habeas Corpus (Petition for Belated Appeal) with the First DCA in which he sought a belated appeal of the circuit court's denial of his Rule 3.800(a) Motion. Resp. Ex. M. The First DCA ultimately granted the request on October 6, 2010, allowing Osmanovic to pursue a belated appeal of the circuit court's order. Resp. Ex. R. On January 20, 2011, the First DCA per curiam affirmed the circuit court's ruling without a written opinion. Resp. Ex. T. The First DCA issued its Mandate on February 15, 2011. Resp. Ex. U.

On January 24, 2011, Osmanovic filed a Motion for Postconviction Relief pursuant to Florida Rule of Criminal Procedure 3.850, see Resp. Ex. V at 1-17, and on December 30, 2011, he filed an Amended Rule 3.850 Motion. See Id. at 28-38. In the Amended Rule 3.850 Motion, Osmanovic alleged that trial counsel was ineffective for failing to: negotiate a plea deal with the state that included a youthful offender sentence (ground one); advise him of the consequences of entering an open plea (ground two); argue he could not be convicted of armed burglary because the state nolle prossed the grand theft count (ground three); and argue the guns he stole were antiques (ground four). Id. at 28-38. On July 3, 2014, the circuit court denied the Amended Rule 3.850 Motion. Id. at 181-87. The First DCA per curiam affirmed the circuit court's order without a written opinion on May 14, 2015. Resp. Ex. Z. The First DCA issued its Mandate on June 9, 2015. Resp. Ex. AA. Additionally, during the pendency of his Rule 3.850 proceedings, Osmanovic filed another Rule 3.800(a) Motion on June 15, 2011. Resp. Ex. BB. However, it appears the circuit court has yet to rule on that Rule 3.800(a) Motion. Resp. Ex. B.

### III. One-Year Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28 U.S.C. § 2244 by adding the following subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). The Court notes that "a post-conviction motion is not pending under

§ 2244(d)(2) between the time that the period to file a timely appeal expires and the filing of a petition for belated appeal," regardless if a state appellate court ultimately grants the belated appeal. McMillan v. Sec'y for Dep't of Corr., 257 F. App'x 249, 252-53 (11th Cir. 2007).

Respondents contend that the Petition is untimely, arguing that Osmanovic is not entitled to tolling from the period between when the ruling on his Rule 3.800(a) Motion became final and when he filed his Petition for Belated Appeal with the First DCA. Doc. 19 at 8-12. Osmanovic counters in his Reply that his filing of the petition for belated appeal tolled the statute of limitations. Doc. 24 at 2. The following procedural history is relevant to the one-year limitations issue.

Osmanovic's judgment became final on June 22, 2009 (ninety days from March 24, 2009). See DeLeon v. Fla. Dep't of Corr., 470 F. App'x 732, 733-34 (11th Cir. 2012) ("On direct appeal, where the petitioner did not file a petition for certiorari to the United States Supreme Court, a judgment becomes final after the expiration of the 90 days in which a petition could have been filed."). The circuit court convicted Osmanovic after April 24, 1996, the effective date of the AEDPA; therefore, Osmanovic had one year from the date his conviction became final to file a federal habeas petition (June 22, 2010). Osmanovic's Petition filed on July 16, 2015[5] is due to be dismissed as untimely unless he can avail himself of one of the statutory provisions which extends or tolls the limitation period.

---

[5] Respondents contend Osmanovic filed the instant Petition on December 15, 2015, Doc. 19 at 11-12; however, the prison date stamp on the Petition reflects Osmanovic handed the Petition to prison officials on July 16, 2015. Doc. 1 at 1. Accordingly, pursuant to the mailbox rule, the Petition is considered filed on July 16, 2015. See Lack, 487 U.S. at. 276.

Here, Osmanovic immediately tolled the AEDPA statute of limitations when he filed his Rule 3.800(a) Motion within the ninety-day window to seek certiorari review of his direct appeal with the United States Supreme Court. See 28 U.S.C. § 2244(d)(2). Because Osmanovic did not timely appeal the circuit court's order, the one-year limitations period began to run on September 6, 2009, thirty days after the denial of his Rule 3.800(a) Motion. See Fla. R. App. P. 9.140(b)(3). Accordingly, prior to the filing of his Petition for Belated Appeal, 292 days of the one-year limitations period had passed because nothing was pending during that period for purposes of section 2244(d)(2). See McMillan, 257 F. App'x at 252-53. The First DCA's granting of Osmaonvic's Petition for Belated Appeal tolled the statute of limitations period again from June 25, 2010, the date he filed the petition, until the First DCA issued its Mandate on February 15, 2011. Id. As of February 15, 2011, Osmanovic had 73 days remaining to file his federal habeas petition (365 days minus 292 days).

However, prior to February 15, 2011, Osmanovic filed a Motion for Postconviction Relief pursuant to Florida Rule of Criminal Procedure 3.850 on January 24, 2011. Resp. Ex. V at 1-17. The filing of this Rule 3.850 Motion further tolled the statute of limitations period. See 28 U.S.C. § 2244(d)(2). Osmanovic's Rule 3.850 proceedings did not become final until June 9, 2015, when the First DCA issued its Mandate affirming the circuit court's denial of his Rule 3.850 Motion. Resp. Ex. AA. Additionally, during the pendency of his Rule 3.850 proceedings, Osmanovic filed another Rule 3.800(a) Motion on June 15, 2011, Resp. Ex. BB, which also tolled the statute of limitations period. See 28 U.S.C. § 2244(d)(2). As noted above, the circuit court has yet to rule on this Rule 3.800(a) Motion, Resp. Ex. B.; therefore, the statute of limitations period remains tolled because the motion

is still pending. <u>See</u> 28 U.S.C. § 2244(d)(2). Based on this record, Osmanovic still had 73 days left in his AEDPA one-year statute of limitations before he filed his Petition on July 16, 2015. Accordingly, the instant Petition is timely.

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Osmanovic's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The AEDPA governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state

criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. As the Eleventh Circuit has explained:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[6] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

---

[6] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

### B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[7] supra, at 747–748, 111 S. Ct. 2546; Sykes,[8] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other

---

[7] Coleman v. Thompson, 501 U.S. 722 (1991).
[8] Wainwright v. Sykes, 433 U.S. 72 (1977).

> requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[9] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

---

[9] Murray v. Carrier, 477 U.S. 478 (1986).

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of

> reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The

> question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, - U.S. at -, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). "In addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Osmanovic alleges that his trial counsel was ineffective for failing to inform Osmanovic that he was eligible for a youthful offender sentence. Doc. 1 at 4-5. According to Osmanovic, counsel had a duty to inform him of the legal ramifications of a youthful offender sentence. <u>Id.</u> at 4. Without such information, Osmanovic contends he involuntarily entered his plea because he did not have all the facts necessary to intelligently comprehend his decision to enter an open plea. <u>Id.</u> But for counsel's failure to advise him on this matter, Osmanovic asserts he would not have entered the plea and would have proceeded to trial. <u>Id.</u> at 5.

Osmanovic raised a similar claim as ground one in his Amended Rule 3.850 Motion. Resp. Ex. V at 29-31. Following an evidentiary hearing, the circuit court denied this claim, stating

>    At the evidentiary hearing, the Court received the testimony of Defendant and the testimony of Shannon Padgett, Esquire, who represented Defendant during the plea negotiations and at the sentencing proceedings. Ms. Padgett testified that, while Defendant was technically eligible for a youthful offender sentence, she did not consider such a sentence a possibility based on her experience representing defendants in felony cases, and thus did not discuss a youthful offender sentence with him. Specifically, Ms. Padgett noted that Defendant had filed a motion to suppress his confession based on his being under the influence of drugs which he snuck into the jail, and that Defendant had a pending escape charge, both circumstances on which a judge would not look favorably, in Ms. Padgett's opinion, and both circumstances which Ms. Padgett believed militated against imposition of a youthful offender sentence. In fact, the sentencing judge considered the escape charge at sentencing, over Defendant's objection.

>    Ms. Padgett also testified to her negotiation strategy, developed over years of practice, of countering a State's offer with something "realistic," and never countering an offer of a prison term with probation. Counsel's negotiation strategy was particularly applicable here, where Defendant was facing a 10-year minimum mandatory term. Ms. Padgett had appeared before the sentencing judge on other occasions, representing other clients; she knew that the sentencing judge was aware of youthful offender sanctions, and believed the judge would accept most reasonable defense offers. On cross-examination, Ms. Padgett stated that she had never seen a youthful offender sentence imposed for a gun crime. The sentencing judge's comment that she was inclined to impose a greater sentence than the State's recommendation lends support to the reasonableness of Ms. Padgett's conduct. In light of the totality of the evidence, including the 10-year minimum mandatory term, the Court finds not credible Defendant's assertion that, before Ms. Padgett's representation, the State had offered him four years.

The Court finds that Ms. Padgett's decision not to seek a youthful offender sentence was made deliberately, after considering alternative courses of actions, and that, in light of her experience as a criminal defense attorney, as a participant in plea negotiations, and as one who had on previous occasions appeared before the sentencing judge, Ms. Padgett's strategic decision was reasonable under the norms of professional conduct and therefore not ineffective assistance of counsel. See Casey v. State, 969 So. 2d 1055, 1058-59 (Fla. 4th DCA 2007).

In its Response, the State alleged that the pre-sentence investigation report ("PSI") recommended prison followed by youthful offender probation. Pursuant to its June 16, 2014 Notice, the Court has reviewed the PSI and confirmed that it did recommend youthful offender probation as an alternative recommended disposition. That fact, together with the sentencing judge's statement on the record that she had reviewed the PSI, lends support to the State's assertion that the sentencing judge must have been aware of Defendant's eligibility for youthful offender sanctions and rejected them, which supports the Court's conclusion that counsel was not ineffective for failing to seek a youthful offender sentence.

Id. at 182-83 (record citations omitted). The First DCA per curiam affirmed the circuit court's denial of this claim without a written opinion. Resp. Ex. Z.

To the extent that the First DCA decided the claim on the merits,[10] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of

---

[10] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

the evidence presented in the state court proceedings. Thus, Osmanovic is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, Osmanovic's claim in Ground One is without merit. Pursuant to section 958.04, Florida Statutes, in lieu of the normal statutory sentencing scheme, a trial court may impose a youthful offender sentence of up to six years in prison for an eligible defendant between the ages of eighteen and twenty-one. "Youthful offender sentencing is discretionary . . . [and] minimum mandatory terms otherwise associated with the offense of conviction do not apply . . . ." Eustache v. State, 248 So. 3d 1097, 1099 (Fla. 2018).

During the plea colloquy, Osmanovic admitted his guilt as to count two. Resp. Ex. A at 275. In sentencing Osmanovic, the circuit court stated the following:

> In reviewing all of Mr. Osmanovic's history, the Court does not find that there are many or any, actually, redeeming qualities to Mr. Osmanovic . . .
>
> . . . .
>
> Frankly, the Court would have been inclined to give Mr. Osmanovic a higher sentence than the State has recommended, but in view of the fact that he did take ownership at least by entering a plea and not going to trial on this case, and at least took responsibility in that regard, I will find that the State's recommendation is appropriate.

Id. at 331-32.

At the evidentiary hearing, both Osmanovic and his counsel, Shannon Padgett, Esq., testified. Resp. Ex. V at 226-70. Osmanovic testified his counsel never discussed with him the potential for a youthful offender sentence. Id. at 231-32. Padgett testified that her notes did not reflect a conversation with Osmanovic regarding a youthful offender sentence and she had no independent recollection of such a discussion. Id. at 253.

However, she did testify that it is her general practice to be realistic during plea negotiations and she believed that even though Osmanovic was technically eligible for a youthful offender sentence, he was not a candidate. Id. at 251-53. Padgett thought it was unrealistic to argue for a youthful offender sentence because Osmanovic was not in school, did not have a job, was in possession of a firearm during the commission of the offense, got charged with escape while incarcerated awaiting disposition of his case, and admitted to illegally sneaking drugs into jail prior to sentencing. Id. at 254-55. These facts demonstrated to Padgett that a youthful offender sentence was not realistic in light of Osmanovic's history of not respecting rules or authority. Id. at 255. Therefore, in accordance with her general practice, at the sentencing hearing Padgett argued for a ten-year sentence, which she felt was reasonable given Osmanovic's circumstances and the sentencing judge's reputation. Id. at 254-55.

Based on this record, Osmanovic cannot demonstrate ineffective assistance of counsel. Given Osmanovic's personal history, his possession of a firearm during the commission of his offense, and his behavior following his arrest, reasonable counsel could have concluded that arguing for a youthful offender sentence would have been fruitless. This is particularly true in light of the circuit court's statements during sentencing demonstrating that the circuit court was not predisposed to sentence Osmanovic to anything less than what the state suggested. Indeed, the circuit court specifically stated it was initially "inclined to give Mr. Osmanovic a higher sentence than the State [had] recommended." Resp. Ex. A at 332. Accordingly, the Court finds Padgett made a reasonable strategic decision not to argue for the imposition of a youthful offender sentence, as such she was not deficient for failing to make this argument. See Chandler

v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (quoting Darden v. Wainwright, 477 U.S. 168, 186 (1986)) (explaining that "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'").

Moreover, Osmanovic cannot demonstrate prejudice. The decision to impose a youthful offender sentence is within the discretion of the circuit court. See Eustache, 248 So. 3d at 1099. Based on the circuit court's statements at the sentencing hearing, the Court finds there is no reasonable probability that the circuit court would have imposed a youthful offender sentence had counsel requested such a sentence. Indeed, the circuit court's own statements reflect it would not have imposed such a sentence and would not even have been inclined to impose the ten-year sentence but for the state recommendation that was obtained by counsel's negotiation. As such, Osmanovic has failed to establish either deficient performance or prejudice. For the above stated reasons, the claim raised in Ground One is due to be denied.

### B. Ground Two

In Ground Two, Osmanovic avers that trial counsel failed to inform him of the consequences of entering an open plea. Doc. 1 at 6. Osmanovic generally complains that counsel failed to explain the pros and cons of entering an open plea but does not give any specific examples of counsel's misadvise or omissions except to allege this claim "is cumulative to Ground One." Id. According to Osmanovic, had counsel explained the consequences of an open plea, he would not have entered the plea. Id.

Respondents contend that this claim is procedurally defaulted because Osmanovic failed to properly exhaust this claim in state court. Doc. 19 at 43-47. Although Osmanovic

raised a similar claim in his Amended Rule 3.850 Motion, Respondents argue that Osmanovic failed to invoke one complete round of Florida's appellate review process. Id. at 43. According to Respondents, Osmanovic failed to present this claim to the postconviction appellate state court because his initial brief did not address or otherwise allege error on the part of the circuit court as to this claim. Id. In his Reply, Osmanovic counters that he did raise this claim on appeal of the denial of his Amended Rule 3.850 Motion because the single issue on appeal involved grounds one and two of his Amended Rule 3.850 Motion. Doc. 24 at 3.

The record reflects that Osmanovic raised a similar claim as ground two of his Amended Rule 3.850 Motion. Resp. Ex. V at 32-34. Following the circuit court's denial of this claim, Osmanovic raised one issue on appeal, that the circuit court erred in denying his Amended Rule 3.850 Motion following an evidentiary hearing. Resp. Ex. W at 6-10. Although titled as a challenge to the entire circuit court order, the content of Osmanovic's argument in his initial brief reflects that he only challenged the denial of ground one of his Amended Rule 3.850 Motion.[11] Id. Accordingly, Osmanovic failed to properly exhaust this claim because he did not invoke a complete round of the state's appellate process. See Wade v. State, 201 So. 3d 806, 807 (Fla. 1st DCA 2016) (citing Watson v. State, 975 So. 2d 572, 573 (Fla. 1st DCA 2008)) ("As the appellant filed an initial brief but failed to address any of the remaining [postconviction] claims, he has waived the right to have them considered in this appeal."); Boerckel, 526 U.S. at 845; see also Cooks v. Sec'y, Dep't of Corr., No. 4:12CV403-WS/CJK, 2015 WL 4601009, at *5 (N.D. Fla. July 29, 2015)

---

[11] Ground one of Osmanovic's Amended Rule 3.850 Motion is the same as Ground One of the instant Petition.

("Because Petitioner elected to file an appellate brief following the summary denial of his postconviction motion, but did not raise this issue in his appellate brief, the Court agrees with Respondent that Petitioner's claim is procedurally defaulted and foreclosed from federal review."); Corn v. McNeil, No. 3:08CV199 MCR EMT, 2010 WL 5811434, at *17 (N.D. Fla. Nov. 24, 2010), report and recommendation adopted, No. 3:08CV199 MCR EMT, 2011 WL 588713 (N.D. Fla. Feb. 10, 2011) (concluding "that the Florida procedural rule deeming as waived or abandoned those claims for which an appellant has not presented any argument in his [postconviction] appellate brief (or for which he provides only conclusory argument), even when the insufficiently presented claims were summarily denied by the trial court, is a firmly established and regularly followed procedural rule for purposes of federal habeas."). Accordingly, this claim is procedurally defaulted. Osmanovic has not shown either cause excusing the default or actual prejudice resulting from the default. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming this claim is not procedurally defaulted, the claim in Ground Two is without merit. Conclusory allegations are insufficient to warrant federal habeas relief. Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); see also Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim). Additionally, the United States Supreme Court has noted that "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also Kelley v. State, 109 So. 3d 811, 812-13 (Fla. 1st DCA 2013) (holding a court may deny postconviction relief where sworn representations the defendant made to

the trial court refute his or her postconviction claims). Here, the Court finds the instant claim to be so vague and conclusory that Osmanovic is not entitled to federal habeas relief. Osmanovic provided no details in his Petition concerning how counsel specifically misled him or what counsel specifically failed to inform him about as it relates to the consequences of an open plea. Doc. 1 at 6. As such, the Court is unable to ascertain from the Petition the nature of counsel's alleged deficient performance or how that performance prejudiced Osmanovic. Accordingly, the conclusory nature of the claim raised in Ground Two renders it insufficient to warrant federal habeas relief. See Wilson, 962 F.2d at 998.

More importantly, the plea colloquy and Osmanovic's sworn representations during it, refute Osmanovic's conclusory contentions concerning his general unawareness of the sentencing possibilities following an open plea. During the plea colloquy, both the prosecutor and circuit court advised Osmanovic that the sentencing guidelines called for a term of imprisonment between 34.5 months and life, and that he faced a ten-year minimum mandatory term of imprisonment. Resp. Ex. A at 272-73. Osmanovic, under oath, represented that he understood these sentencing possibilities. Id. at 273. The circuit court explained to Osmanovic that a sentencing hearing would take place, at which it would determine the appropriate sentence. Id. at 273-74. Osmanovic again represented that he understood this procedure. Id. at 274, 277. Osmanovic also told the circuit court that he was satisfied with his attorney, he did not need additional time to discuss the case or plea, no one coerced him into entering the plea, and he understood all the consequences of entering the plea. Id. at 274-75, 277. Based on this record, the Court finds that the circuit court and the state adequately informed Osmanovic about the

consequences of entering an open plea. Therefore, Osmanovic cannot demonstrate prejudice because the plea colloquy cured any prejudice counsel's alleged errors might have caused Osmanovic. Additionally, the Court finds that Osmanovic's sworn representations to the circuit court refute his allegations in his Petition that he did not understand the consequences of entering an open plea. See Blackledge, 431 U.S. at 74; Kelley, 109 So. 3d at 812-13. Accordingly, for these reasons, relief on Ground Two is due to be denied.

### C. Ground Three

As Ground Three, Osmanovic contends that his trial counsel was ineffective for failing "to object to any 'armed' burglary count after the State nol-prossed the alleged 'Grand Theft' charge." Doc. 1 at 8. According to Osmanovic, "the grand theft charge was the alleged 'firearm' contained in the burglary charge." Id. Osmanovic claims counsel's failure to object prejudiced him because it failed to preserve this issue for appeal. Id. But for this failure, Osmanovic alleges he would not have entered the plea.

Respondents assert that Osmanovic procedurally defaulted this claim because he failed to properly exhaust this claim in state court. Doc. 19 at 48-52. Although Osmanovic raised a similar claim in his Amended Rule 3.850 Motion, Respondents argue that Osmanovic failed to present this claim to the postconviction appellate state court because his initial brief did not address or otherwise allege error on the part of the circuit court as to this claim. Id.

Osmanovic raised a similar claim as ground three of his Amended Rule 3.850 Motion. Resp. Ex. V at 35-36. However, as noted above, Osmanovic only challenged the circuit court's denial of ground one of his Amended Rule 3.850 Motion on appeal. Resp.

Ex. W at 6-10. Thus, he failed to properly exhaust this claim because Osmanovic did not invoke a complete round of the state's appellate process. See Wade, 201 So. 3d at 807; Boerckel, 526 U.S. at 845; Cooks, No. 4:12CV403-WS/CJK, 2015 WL 4601009, at *5; Corn, No. 3:08CV199 MCR EMT, 2010 WL 5811434, at *17. This claim is therefore procedurally defaulted. Osmanovic has not shown either cause excusing the default or actual prejudice resulting from the default. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Nevertheless, even if this claim is not procedurally defaulted, the claim in Ground Three is without merit. Pursuant to section 810.02(2)(b), Florida Statutes, burglary becomes armed burglary if an offender "is or becomes armed within the dwelling, structure, or conveyance, with . . . a dangerous weapon." On the other hand, a completely different statute governs grand theft. See § 812.014(2)(a)-(c), Fla. Stat. "[T]he armed burglary statue neither requires a theft, nor that the weapon involved be a firearm," and "the armed burglary statute does not require the intent to commit a theft, but rather the intent to commit an offense." Gaber v. State, 662 So. 2d 422, 423 (Fla. 3d DCA 1995). As such, any objection to being sentenced to armed burglary because the state nolle prossed the grand theft charge would have been meritless as the grand theft charge was independent of the armed burglary charge. Id. This is particularly true in light of the fact that the state nolle prossed the grand theft charge after the circuit court sentenced Osmanovic, and as such counsel would not have had a basis to object at the time of sentencing. Resp. Ex. A at 334. As any objection would have been meritless, counsel cannot be found ineffective for failing to raise this objection. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective

for failing to raise a meritless argument); <u>Bolender v. Singletary</u>, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

Moreover, Osmanovic's claim of prejudice revolves around the failure to preserve this issue for appeal. However, "there is no clearly established federal law by the Supreme Court specifically addressing whether the federal court should examine the prejudice on appeal rather than at trial in a case [where an issue was raised but not properly preserved]." <u>Carratelli v. Stepp</u>, 382 F. App'x 829, 832 (11th Cir. 2010). Accordingly, Osmanovic is not entitled to federal habeas relief on this claim. <u>See</u> <u>Id.</u> Therefore, Osmanovic's claim for relief in Ground Three is due to be denied.

### D. Ground Four

In Ground Four, Osmanovic claims that trial counsel was ineffective for failing to object to the state's use of antique firearms to establish Osmanovic was armed during the burglary. Doc. 1 at 9-10. According to Osmanovic, law enforcement did not recover any firearms during its investigation and the only evidence that the victim's firearms were missing came from the victim himself. <u>Id.</u> at 9. However, Osmanovic contends that the victim described the firearms as antiques. <u>Id.</u> As such, Osmanovic claims counsel should have argued that antique firearms do not qualify as firearms within the meaning of the armed burglary statute and moved the circuit court to reduce his sentence. <u>Id.</u> at 9-10.

Respondents assert that Osmanovic procedurally defaulted this claim because he failed to properly exhaust this claim in state court. Doc. 19 at 53-57. Although Osmanovic raised a similar claim in his Amended Rule 3.850 Motion, Respondents argue that Osmanovic failed to present this claim to the postconviction appellate state court because

his initial brief did not address or otherwise allege error on the part of the circuit court as to its denial of this claim. Id.

The record reflects that Osmanovic raised a similar claim in his Amended Rule 3.850 Motion as ground four. Resp. Ex. V at 35-36. However, on appeal of the denial of his Amended Rule 3.850 Motion, Osmanovic only challenged the circuit court's denial of ground one. Resp. Ex. W at 6-10. Accordingly, Osmanovic failed to properly exhaust this claim because he did not invoke a complete round of the state's appellate process. See Wade, 201 So. 3d at 807; Boerckel, 526 U.S. at 845; Cooks, No. 4:12CV403-WS/CJK, 2015 WL 4601009, at *5; Corn, No. 3:08CV199 MCR EMT, 2010 WL 5811434, at *17. On this record, this claim is procedurally defaulted. Osmanovic has not shown either cause excusing the default or actual prejudice resulting from the default. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming this claim is not procedurally defaulted, the claim in Ground Four is without merit. Under Florida law, an antique firearm is defined as follows:

> [A]ny firearm manufactured in or before 1918 (including any matchlock, flintlock, percussion cap, or similar early type of ignition system) or replica thereof, whether actually manufactured before or after the year 1918, and also any firearm using fixed ammunition manufactured in or before 1918, for which ammunition is no longer manufactured in the United States and is not readily available in the ordinary channels of commercial trade.

§ 790.01(1), Fla. Stat. The Court notes that in federal habeas proceedings, "a determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The circuit court granted Osmanovic an evidentiary hearing on this claim, at which the victim testified that Osmanovic stole, among other items, two firearms, a TEC-9 and a Marlin shotgun. Resp. Ex. V at 240. The victim further testified that the manufacturer produced this specific TEC-9 in the late 1980s and the ignition system did not use gun powder. Id. at 241-42. Similarly, the victim testified that Marlin manufactured the shotgun in the 1980s and it did not use an ignition system that required gun powder. Id. Additionally, the ammunition for the TEC-9 and Marlin shotgun were both still produced at the time of the hearing. Id. The victim further testified that his use of the term "antique" at the sentencing hearing was not meant in a technical sense but rather to reflect the fact that the guns were not new. Id. at 242, 244. Notably, in denying this claim, the circuit court found the two firearms did not constitute antique firearms under Florida law. Id. at 186. Based on this record, the Court finds Osmanovic has failed to present any evidence, much less clear and convincing evidence, rebutting the presumption of correctness regarding the circuit court's conclusion these firearms were not antiques. See 28 U.S.C. § 2254(e)(1). Indeed, given the victim's description of the stolen firearms the Court finds no basis for any argument that the firearms fell within the definition of an antique firearm. See § 790.01(1), Fla. Stat. Accordingly, Osmanovic's claim in Ground Four is due to be denied.

### VII. Certificate of Appealability
### Pursuant to 28 U.S.C. § 2253(c)(1)

If Osmanovic seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing,

Osmanovic "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Motion to Hear and Rule (Doc. 26) is **DENIED** as moot.

3.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

4.     If Osmanovic appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of

appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

5.  The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 26th day of October, 2018.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-8

C:  Azar Osmanovic, #J36158
Anne C. Conley, Esq.